[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13591

Non-Argument Calendar

_____

In re: SEVEN STARS ON THE HUDSON CORPORATION,

Debtor,

_____

SEVEN STARS ON THE HUDSON CORPORATION,
d.b.a. Rockin' Jump

Plaintiff-Counter Defendant-Appellant,

*versus*

MDG POWERLINE HOLDINGS, LLC,
XBK MANAGEMENT LLC,
d.b.a. Xtreme Action Park,

2                    Opinion of the Court                    22-13591

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:22-cv-60299-RAR

_____

Before LAGOA, BRASHER, and BLACK, Circuit Judges.

PER CURIAM:

Seven Stars on the Hudson Corporation (Seven Stars) appeals from the bankruptcy court's grant of summary judgment for MDG Powerline Holdings, LLC (MDG) and XBK Management, LLC (XBK). Seven Stars filed for Chapter 11 bankruptcy, and this appeal arises from a related adversary proceeding in which Seven Stars alleged MDG and XBK interfered with its business. Seven Stars had trouble funding its adversary proceeding litigation, leading to delays in discovery and missing the expert disclosure deadline. After the bankruptcy court refused to further extend expert discovery deadlines, it found Seven Stars had failed to present competent evidence on damages, warranting summary judgment for the defendants. On appeal, Seven Stars contends the bankruptcy court erred by refusing to extend the expert discovery deadlines.

After careful review, like the district court, we affirm the bankruptcy court's decision.[1]

## I.    BACKGROUND

Seven Stars began operations in 2016 as a trampoline park within Xtreme Action Park, an indoor entertainment facility. Xtreme Action Park is operated by XBK in a building owned by MDG. XBK and MDG are allegedly owned and controlled by the same principals.

In June 2019, Seven Stars filed a Chapter 11 voluntary petition and, shortly after, an adversary proceeding against MDG and XBK. From March to June 2020, Seven Stars was forced to close because of a COVID shutdown, exacerbating Seven Stars' financial troubles.

In May 2020, several months after Seven Stars filed its first amended adversary complaint, Legalist, a litigation funder, approached Seven Stars about providing funding for the adversary proceeding litigation, but they could not reach an agreement at that time.

---

[1] As the second court of review in a bankruptcy case, we "examine[] independently the factual and legal determinations of the bankruptcy court and employ[] the same standards of review as the district court." *In re Brown*, 742 F.3d 1309, 1315 (11th Cir. 2014) (quotation marks omitted). "[W]hen a district court affirms a bankruptcy court's order, as the district court did here," we look to the bankruptcy court's decision, reviewing its factual findings for clear error and its legal conclusions *de novo*. *Id.*

Over the next few months, Seven Stars filed its first set of Rule 26(a)(1) initial disclosures in the adversary proceeding and elected to proceed under Subchapter V in the main bankruptcy proceeding.  The main bankruptcy proceeding was dismissed in August 2020 because a Subchapter V plan was not timely filed, and Seven Stars filed a new Chapter 11 Subchapter V petition shortly after.  The adversary proceeding was allowed to continue.

Proceedings picked up in November 2020.  First, the bankruptcy court entered an agreed scheduling order in the adversary proceeding, setting the deadline for the parties to complete fact discovery in January 2021; exchange expert witness summaries and reports[2] in February 2021; and complete expert discovery in March 2021.  Seven Stars then timely requested leave to file a second amended adversary complaint.  A couple of weeks later, XBK served written interrogatories on Seven Stars regarding damages and expert witnesses, and MDG filed a claim in the main bankruptcy proceeding for over $230,000 in unpaid rent, late fees, taxes, and legal fees.  Around this time, Legalist again approached Seven Stars about a litigation funding agreement.

The bankruptcy court granted Seven Stars leave to amend over MDG's objection, and, on January 15, Seven Stars filed an uncontested motion requesting a 60-day extension of "both the Fact and Expert discovery deadlines."  The attached proposed order also

---

[2] For ease of reference, we refer to the deadline to exchange expert witness summaries and reports as the expert disclosure deadline.  *See* Fed. R. Civ. P. 26(a)(2); Fed. R. Bankr. P. 7026.

extended other pretrial deadlines, including expert disclosure, by 60 days.

Seven Stars filed its operative second amended complaint in late January 2021, asserting common-law claims and claims under Florida's Deceptive and Unfair Trade Practices Act. At the same time, Seven Stars asked the court in the main bankruptcy proceeding to authorize a term litigation funding agreement to cover Legalist's costs in conducting the due diligence necessary to decide whether to offer a full funding agreement. After oral argument, the bankruptcy court allowed Seven Stars to enter the term agreement, noting the court would need to approve any future litigation funding agreement.

On March 15, Seven Stars filed a second motion to extend "discovery deadlines," requesting a 30-day "enlarge[ment of] the time for the completion of discovery." Counsel found "it necessary to request additional time to complete fact discovery and then to proceed with the completion of expert discovery." She explained there were troubles scheduling depositions and that Seven Stars' principals had a family medical emergency. Seven Stars also expected to soon find out whether it would receive funding from Legalist, which it needed to complete discovery. The motion, which was filed before hearing back from opposing counsel, did not include a new proposed scheduling order or refer to the expert disclosure deadline although it noted the fact and expert discovery deadlines.

Two days later, the bankruptcy court entered the second agreed scheduling order, which had been attached to the January 15 motion. The new schedule set fact discovery due by March 16, expert disclosure by April 6, and expert discovery by May 14. The court also scheduled a hearing on the March 15 motion for April 7.

On April 6, in the main bankruptcy proceeding, Seven Stars moved for permission to enter into a full funding agreement with Legalist for $105,000 to cover the cost of litigation. Otherwise, the April 6 expert disclosure deadline passed without Seven Stars disclosing an expert witness.

On April 7, the bankruptcy court held a hearing on the discovery timeline. Given the family medical emergency, MDG and XBK did not oppose extending the fact discovery deadline to take depositions, and the bankruptcy court extended *fact* discovery until April 29. But MDG opposed extending the *expert* discovery deadline because Seven Stars had not explained why an extension of that deadline was needed. Although Seven Stars' counsel believed the other deadlines would be moved along with the fact discovery deadline, the bankruptcy court disagreed and found an extension on the other deadlines was not properly before it based on the March 15 extension motion. Consequently, it left the other deadlines in the scheduling order intact and stated the parties could confer and file another motion if needed.

A couple of days later, Seven Stars amended its litigation funding motion in the main bankruptcy proceeding, adding that it needed the funds to cover the costs of experts and assistance for

trial counsel.  At an April 14 hearing on the litigation funding, MDG objected to the proposed $55,000 to cover the cost of expert witnesses because Seven Stars had not timely disclosed an expert or provided an expert report and, if approved, Seven Stars would need to pay a multiplier on funds it could not use.  The bankruptcy court overruled MDG's objection and permitted Seven Stars to enter into the litigation funding agreement, finding it was an appropriate exercise of the debtor's business judgment under the circumstances.  But the court also reiterated that it had only extended fact discovery in the adversary proceeding and would entertain an extension motion regarding expert discovery when, or if, it was presented.  The written order granting the litigation funding was entered on April 19.

On April 28, Seven Stars moved for a third discovery extension in the adversary proceeding, requesting the "fact discovery deadline" be extended to May 14 and the "expert deadline" be extended from May 15 to July 14, 2021.  Seven Stars explained that "[e]xpert discovery in this case was anticipated from the beginning on the issue of damages," but it had been waiting for the funding agreement to hire experts.  It also stated it was "in the process of finalizing a decision on experts and once retained, the expert will need the sixty days to investigate and prepare a report and for expert depositions to take place."  However, like the second extension motion, the April 28 motion did not expressly address the expert disclosure deadline, refer to the April 6 deadline, or attach a new proposed schedule.

MDG objected in part, emphasizing that Seven Stars was seeking a third extension in less than four months of both fact and expert discovery deadlines. Although MDG did not oppose another extension of fact discovery, it argued none of the exigent circumstances cited by Seven Stars had bearing on expert discovery deadlines. It also noted that Seven Stars had not "expressly requested an extension of the now-passed expert disclosure deadline."

In response to MDG's objections, Seven Stars added a request "that the deadline for identifying and designating experts be extended to June 3, 2021."

Around this time, the bankruptcy court confirmed the Subchapter V plan in the main bankruptcy proceeding.

On May 12, the bankruptcy court held a hearing on the third extension motion where Seven Stars pointed out its funding issues and that the expert discovery period had not expired. Seven Stars also indicated it had "sent the resume" for an expert to Legalist and was waiting on approval, which would take "a little bit longer than expected," about two weeks.

The bankruptcy court acknowledged its familiarity with the funding issues and lengthy litigation history but asked why Seven Stars waited three weeks after the April 6 expert disclosure deadline to seek an extension. Seven Stars responded that it "had absolutely no expert to designate at that point."

While the bankruptcy court extended the fact discovery deadline until May 14, it refused to extend the "expert discovery

deadline." It explained that "[s]cheduling orders matter," it had granted previous extensions, and the defendants objected to another extension. Although the court "empathize[d]" with Seven Stars' position, it found that Seven Stars had long-known about the need for an expert on damages yet failed to timely disclose an expert, timely move to extend the expert deadline, or show good cause under Federal Rule of Civil Procedure 16 to extend it.

On May 23, 2021, Seven Stars finally served late, unauthorized answers to XBK's March 17, 2021, expert witness interrogatories, indicating that Seven Stars was seeking $1.2 million in lost profits and $2.5 million for tortious interference. In the following weeks, Seven Stars twice amended its response to MDG, adding $800,000 for breach of contract.

With Seven Stars having disclosed no expert evidence on damages, MDG and XBK moved for summary judgment, arguing that Seven Stars was improperly seeking lost revenues, rather than lost profits, and that the record did not contain sufficient evidence of damages. Seven Stars opposed the motion and attached a declaration from one of its principals asserting Seven Stars suffered $1,567,387, or $1,888,110 in damages for loss of investment value. MDG and XBK moved to strike the declaration as a sham.

The bankruptcy court granted MDG and XBK's motion to strike the new declaration, finding it was "clearly inconsistent with Seven Stars' initial disclosures, interrogatory answers, and [one of Seven Stars' principals'] own deposition testimony." Although the bankruptcy court acknowledged there was some evidence to

support Seven Stars' claims, the court found Seven Stars had not offered sufficient evidence of damages to create a triable issue of fact, so it granted summary judgment for MDG and XBK.

Seven Stars appealed to the district court, which affirmed the bankruptcy court's rulings, and Seven Stars now appeals to this Court.

## II.    DISCUSSION

While this case has a complex procedural history, Seven Stars has conceded there were no damages calculations contained in its initial Rule 26(a) disclosures, interrogatory responses, or deposition testimony. Instead, Seven Stars' argument on appeal focuses on whether the bankruptcy court should have extended the expert discovery deadline so it could present expert testimony on damages and whether the bankruptcy court misapplied Bankruptcy Rule 9006 and Civil Rules 16 and 37.

We first address whether the bankruptcy court abused its discretion by refusing to extend the expert discovery deadlines. *See Sosa v. Airprint Sys.*, 133 F.3d 1417, 1418-19 & n.2 (11th Cir. 1998). We then explain why Civil Rule 37 does not apply.

*A. Extending Pretrial Deadlines in Scheduling Orders*

A court must issue a scheduling order limiting the time to, among other things, complete discovery. Fed. R. Civ. P. 16(b); Fed. R. Bankr. P. 7016 (incorporating Fed. R. Civ. P. 16 for adversary proceedings). The scheduling order can also modify the timing for Rule 26(a) disclosures. Fed. R. Civ. P. 16(b)(3)(B). And, under Rule

26(a), a party must disclose the identity of any expert witness along with the appropriate witness report or summary at the time the court orders.  Fed. R. Civ. P. 26(a)(2); Fed. R. Bankr. P. 7026 (making Fed. R. Civ. P. 26 applicable to adversary proceedings).

The Civil Rule 16 scheduling order "controls the course of the action unless the court modifies it."  Fed. R. Civ. P. 16(d).  And, once set, "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  This good cause standard is tied to the diligence of the party seeking the extension.  *See Sosa*, 133 F.3d at 1418; Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment.

"[F]or pretrial procedures to continue as viable mechanisms of court efficiency, appellate courts must exercise minimal interference with trial court discretion in matters such as the modification of its orders."  *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979)[3] (reviewing whether the trial court should have modified a pretrial order to develop certain issues at trial).  "Thus, we ascribe to the trial court a broad discretion to preserve the integrity and purpose of the pretrial order, … and in reviewing trial court decisions which prevent the introduction of otherwise competent and relevant evidence we will not disturb the trial court's ruling unless it is demonstrated that the trial court has so clearly abused its discretion that its action could be deemed arbitrary."  *Id.* (citation

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

omitted).  Indeed, we "have often held that a district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion."  *St. Louis Condo. Ass'n v. Rockhill Ins. Co.*, 5 F.4th 1235, 1243 (11th Cir. 2021) (quoting *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011).

As an initial matter, the parties and bankruptcy court were not always explicit in distinguishing between the expert disclosure deadline and the other discovery deadlines.  Consequently, it is debatable whether Seven Stars properly moved for an extension of the April 6 disclosure deadline.  The bankruptcy court and district court apparently concluded it did not.  Indeed, neither the March 15 nor April 28 motion expressly addressed the April 6 disclosure deadline although the April 28 motion hinted at it.  It was not until Seven Stars' response to MDG's objections to the April 28 motion that it specifically requested an extension of the expert disclosure deadline.  In any event, the expert deadlines are related, and the bankruptcy court was acutely aware the April 6 deadline had passed without an expert being disclosed.  Had it been inclined to grant an extension of the expert discovery deadline, it would have presumably also extended the disclosure deadline.  Considering that Rule 16(b)'s good cause standard applied to both, we will assume the bankruptcy court effectively declined to extend both the expert disclosure and discovery deadlines.  *See Sosa*, 133 F.3d at 1418.[4]

---

[4] There has been some confusion about the proper standard.  At the May 12 hearing, the bankruptcy court properly discussed Rule 16's good cause

On the merits, the bankruptcy court was familiar with the extensive history of the bankruptcy proceedings—both in the main bankruptcy case and the adversary proceeding, which had been pending since 2019.  The bankruptcy court considered Seven Stars' difficulty in obtaining funding litigation but refused to extend the April 6 deadline over the defendants' objection, emphasizing that "[s]cheduling orders matter" and, under the federal rules, they may be modified only for good cause and with the court's consent. When the bankruptcy court asked Seven Stars to justify the delay in filing the April 28 motion, Seven Stars' counsel only noted that it did not have an expert to disclose while it was waiting on approval for the litigation funding.    As the bankruptcy court

---

standard, but it alluded to the excusable neglect standard from Bankruptcy Rule 9006(b)(1) in its final memorandum opinion.  *See* Fed. R. Bankr. P. 9006(b)(1) (giving the bankruptcy court discretion to extend a period after a deadline has passed "where the failure to act was the result of excusable neglect").  On appeal, Seven Stars also argues the excusable neglect standard applied to the lapsed expert disclosure deadline.  But we have rejected that argument, explaining the more specific Civil Rule 16 standard, not the more general Civil Rule 6 standard, is the proper guide for determining whether a party's delay in seeking to extend a scheduling order deadline may be excused. *Sosa*, 133 F.3d at 1418-19 & n.2.  We see no reason why that would not also be true for a scheduling order in an adversary proceeding.  Moreover, even if a showing of excusable neglect were also required, the bankruptcy court discussed many of the excusable neglect factors. *See Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (discussing excusable neglect).  And Seven Stars did not advance its excusable neglect argument in its April 28 motion. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (explaining we will not typically consider an issue not raised in the lower court).

explained, Seven Stars planned early in the litigation to introduce expert testimony on damages, yet it failed to act diligently to protect its ability to do so.

Seven Stars also points out that the bankruptcy court approved the funding litigation agreement as an appropriate exercise of Seven Stars' business judgment over MDG's objections to the expert fees. But at the April 14 hearing on the litigation funding, the bankruptcy court explained it was not considering the expert disclosure deadlines in the adversary proceeding and that Seven Stars still needed to move for an extension. Nothing at that hearing suggested the bankruptcy court would grant such a motion, and the denial of the April 28 motion was not inconsistent with permitting the funding agreement.

The bankruptcy court's refusal to extend the expert discovery deadlines was undoubtedly a consequential decision, and we might have made a different decision. But we cannot say the bankruptcy court's choice to enforce the April 6 expert disclosure deadline constituted a clear error of judgment. *See St. Louis Condo. Ass'n*, 5 F.4th at 1243; *Hodges*, 597 F.2d at 1018; *see also In re Rasbury*, 24 F.3d 159, 168 (11th Cir. 1994) (discussing the range of choices afforded to a district court under an abuse of discretion standard of review).

### B. *Civil Rule 37(c) Sanctions*

Seven Stars also discusses Civil Rule 37(c) and contends the bankruptcy court erred in imposing the harshest sanction and in

not considering certain factors when refusing to extend the April 6 deadline.

Under Rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c); *see* Fed. R. Bankr. P. 7037 (applying Fed. R. Civ. P. 37 in adversary proceedings).

However, Rule 37(c) is not relevant to the extension issue presented, and Seven Stars has abandoned any issue related to striking the declaration by its principal.[5] As the district court explained, the bankruptcy court did not exclude any of Seven Stars' expert evidence as a sanction under Rule 37(c) because Seven Stars never offered an expert witness or expert testimony. As a result, the bankruptcy court did not need to consider whether the failure to comply with Rule 26(a) was "substantially justified or . . . harmless." Fed. R. Civ. P. 37(c). Nor, as Seven Stars would ask, can we fault the bankruptcy court for not using a five-factor test derived

---

[5] After the Rule 37(c) section, Seven Stars dedicated a seven-page section of its initial brief in the district court to arguing the bankruptcy court erred in striking the declaration as a sham. However, Seven Stars omitted that section from its initial brief in this Court, and it makes only a passing comment in a footnote that the bankruptcy court abused its discretion in striking the declaration. "Normally, we do not review arguments that were raised only in a footnote without supporting argument." *Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1120 n.7 (11th Cir. 2020).

from the Fourth Circuit, particularly where the bankruptcy court discussed issues like Seven Stars' explanation for the delay, the importance of expert testimony on the issue of damages, and the harm to the defendants.

To the extent the bankruptcy court's summary judgment memorandum opinion discussed Rule 37(c) in the context of disclosure, it concluded Seven Stars would have failed to meet its burden under Rule 37(c) even if it had offered late expert evidence. Considering that Seven Stars did not actually seek to admit late expert evidence, we need not decide whether that conclusion was correct.

## III.    CONCLUSION

The bankruptcy court did not abuse its discretion in refusing to further extend the expert discovery deadlines, and without competent evidence on damages, the grant of summary judgment for the defendants is due to be affirmed.[6]

**AFFIRMED.**

---

[6] We **GRANT** the appellant's motion to correct or amend its reply brief, and we **DENY** MDG's motion for Fed. R. App. P. 38 sanctions. Although we affirm the bankruptcy court's decision, this appeal was not frivolous, and sanctions against Seven Stars are not warranted.